UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - FLINT

DASHAWN JOHNSON,
    Plaintiff,

vs.                                            CIVIL NO. 2:07-CV-11230

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,    HON. DENISE PAGE HOOD
    Defendant                            MAG. JUDGE. STEVEN D. PEPE.
_____/

## Report and Recommendation

**1.    Background**

Plaintiff, DaShawn Johnson, brought this action under 42 U.S.C. §405(g) and §1383(c)(3) to challenge a final decision of the Commissioner that he was not entitled to Disability Insurance Benefits ("DIB") under Title II or Title XVI of the Social Security Act. Plaintiff and Defendant filed motions for summary judgment. Both motions have been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the following reasons, it is recommended that the Commissioner's motion for summary judgment be **GRANTED** and Plaintiff's motion for summary judgment be **DENIED**.

**A.    Procedural History**

Plaintiff applied for Supplemental Security Income (SSI) Benefits alleging disability since July 13, 2003 (R. 45-47, 51, 142-43). Plaintiff's application was denied on December 17, 2003 (R. 27, 28-32). Plaintiff appeared before Administrative Law Judge ("ALJ") Regina Sobrino for a hearing on March 22, 2006 (R. 150-80). On May 19, 2006, ALJ Sobrino found Plaintiff not eligible for Social Security benefits (R. 17-21). The Appeals Council affirmed the

ALJ's Decision denying review (R. 4-7).[1]

B.     **Background Facts**

    1.     *Plaintiff's Hearing Testimony and Statements*

Plaintiff was born in 1972, and was thirty-three years old when he appeared before ALJ Sobrino (R. 19, 153). He completed the tenth grade, and has not worked since a July 2003 gunshot injury (R. 154). Plaintiff has undergone several surgical procedures, but he deferred the most recent procedure because he feared being hospitalized for 3 or 4 months and separated from his sons.

After being shot, Plaintiff was in the hospital for four months (R. 155). On July 13, 2003, Plaintiff had emergency surgery, and three days later had to undergo surgery again due to infection. Subsequently, Plaintiff had another surgery removing 4 inches of intestine, and this resulted in his being hospitalized for 3 months. Plaintiff's most recent surgery was in 2004 (R. 156).

Plaintiff's medications are Ibuprofen, Naproxin, Cyclobenzaprine, Hydrocloriphyside, Cloracon, and Colase. These medicines produce side effects. Naproxin make Plaintiff jittery, and the Ibuprofen/motrin, blood pressure medicine and muscle relaxants knock him "out" (R. 157).

Plaintiff can stand for 15 minutes, sit for 20 minutes (R. 157). He has trouble lifting 10 or 15 pounds, due to hernias (R. 158). Plaintiff has problems grasping when he is "jittery" from medication. It is difficult to lift his arms over his head. Plaintiff's hip hurts, and he has

---

[1]The Appeals Council decision (R. 5-7) does not indicate the date of the decision, and neither motion for summary judgment lists a date, either.

difficulty bending and does not bend his knees to pick up objects from the ground (R. 158-59). Plaintiff occasionally has trouble walking up the stairs, in his two story house, due to his back and hip (R. 153, 159). Plaintiff reclines in a chair, with his legs at waist level for about 45 minutes each day when his medicine makes him groggy (R. 164).

Plaintiff lives with his three sons who help him with cooking and cleaning (R. 159). Plaintiff's fiancee helps with cooking, and she buys the groceries (R. 160). Family, friends and Plaintiff's sons do the yard work. Plaintiff does some cooking and "dishes." Plaintiff has a German Shepherd which his sons walk. Plaintiff does not take out the trash, and the only yard work he does is to show his sons how to care for the it (R. 161).

Plaintiff used to enjoy working on cars, but he can no longer do that due to his hernias. Plaintiff does not have a driver's license, and relies upon his parents, fiancee and friends to transport him. Plaintiff uses the bus sometimes, and his sons take the bus to and from school (R. 162). In spite of requests to obtain them, Plaintiff's counsel has not been able to obtain his most recent medical records (R. 162-63).

Plaintiff takes 2 or 3 naps per day (R. 165). Plaintiff is 5' 6," and weighs 240 pounds (R. 165). Upon discharge from the hospital in August 2003, he weighed 198 pounds.

Plaintiff stated that the full-time job he held longest was working as a machine operator (R. 174). Plaintiff worked in a fish store as a clerk and fish cutter for ten years, and at McDonald's as a crew leader, for one year, training to be a manager (R. 174-75). Plaintiff had to lift 75 pound buckets when cutting fish.

*2. Medical Evidence*

Plaintiff was hospitalized on July 13, 2003, until August 1, 2003, during which he

3

underwent major surgery, including: suture of large bowel laceration; drainage of abdomen; destruction of abdomen wall lesion; delayed closure of abdomen wound; and nebulizer therapy (R. 87-90).

Plaintiff underwent an exploratory laparotomy, was given prescriptions and discharged on August 1, 2003 (R. 87, 89, 91, 124). Plaintiff's surgeon was Dr. Abdelmajid Jondy, M.D. (R. 97). Upon discharge, Plaintiff was restricted to no lifting, pushing, or pulling more than fifteen pounds (R. 89). July 13, 2003, X-rays show a bullet in the lower left posterior flank, metallic foreign bodies from bullet fragments largely in the lower left flank (R. 104). The pancreas and adrenals were normal. On July 14, 2003, Bernard Danan, M.D., examined Plaintiff noting good tone, no gross blood and no bullet wounds present (R. 91). A July 16, 2003, X-ray revealed mild evidence of heart enlargement and clear lungs without evidence of infiltrate or effusion (R. 101). July 20, 2003, notes by Dr. Jondy indicate that Plaintiff's wound had been infected, had a lot of necrotic tissue and was emitting drainage (R. 97). Four milligrams of morphine were provided. On July 22, 2003, Cathy O. Blight, M.D., examined a specimen of Plaintiff's abdominal tissue wall noting no change in post-operative diagnosis (R. 96). A July 25, 2003, X-ray ordered by Dr. Danan indicates that Plaintiff's cardiovascular silhouette is normal, lung fields are clear and osseous structures are satisfactorily mineralized and intact (R. 99).

On August 11, 2003, Plaintiff was prescribed Vicodin, his wound was cleaned and drained (R. 118-21, 131).

On February 2, 2004, Dr. S. Saeed examined Plaintiff noting necrotizing fasciitis in the abdominal wound (R. 122). On February 24, 2004, Dr. Jondy performed surgery on Plaintiff

4

repairing the hernias, lysis of adhesions, small bowel resection, and removing a bullet in his left hip (R. 124-26, 129).  On March 4, 2004, Dr. Jondy, performed a secondary closure of Plaintiff's abdominal wound (R. 127-29).  Following surgery, Dr. Kidane wrote that Plaintiff was unable to do any lifting for three months, and after three months would be evaluated for lifting restrictions of ten pounds or less (R. 129). On March 24, 2004, Dr. Saeed found no signs of infection; remarking Plaintiff's wound was cleaned and drained (R. 130).  Plaintiff did not return for his April 2004 follow-up visit (R. 130, 139), and the record does not contain any medical evidence for the remainder of 2004 or 2005.

On January 10, 2006, two months before Plaintiff's administrative hearing, Dr. Jondy observed that Plaintiff had multiple incisional hernias, which were reproducible and non-tender with pressure (R. 139).  Dr. Jondy recommended surgical repair of Plaintiff's hernias; however, he remarked that Plaintiff "is only seeking disability status at this time, and does not wish any repair of the hernias at this time."  He also noted Plaintiff's failure to keep his April 2004 follow-up appointment.  Dr. Jondy completed a Medical Source Statement (Physical), indicating that Plaintiff could occasionally lift/carry less than ten pounds, stand/walk about six hours in an eight-hour workday, and sit about six hours in an eight-hour workday (R. 138).  When asked to describe any other work-related limitations, including those resulting from pain or prescribed medications, Dr. Jondy responded that Plaintiff could not lift or perform strenuous work until his hernias were repaired.  When asked how many hours per month the above limitations would likely disrupt a regular job schedule with low physical demands, Dr. Jondy responded "till hernias repaired & healed."

3. *<u>Medical Expert and Vocational Expert Testimony</u>*

Mary Jo Voelpel, a Medical Expert ("ME") testified about Plaintiff's condition. The ME asked Plaintiff if he still had a bullet lodged in his chest which he replied that he did not (R. 167). The ME testified that Plaintiff's gunshot injury resulted in perforation of the bowel; bullet damage to the iliac crest, part of the upper hip; as well as complications due to perforation of the bowel and an abdominal opening that had trouble closing due to a lack of tissue (R. 168). Problems with tissue closing led to drainage and healing problems (R. 168-69). The ME testified that Plaintiff's abdomen injury created large areas where a lack of musculature allows for hernias to regularly emerge outside the anterior abdominal wall (R. 169).

ME Voelpel stated that due to Plaintiff's abdominal defects, his movement range is limited, and movements that increase intra-abdominal pressure are to be avoided (R. 170). She explained that Plaintiff's movement restrictions would include actions that "you and I would do in terms of every day activities." ME Voelpel was uncertain if an external binder would aid Plaintiff. She could not determine what sort of surgery it was that Plaintiff delayed (R. 171). Lifting more than 2-5 pounds would cause Plaintiff discomfort (R. 172). In response to the ALJ's question, the ME opined that Plaintiff meets no listing in Appendix 1, and the listings do not address the motions which are difficult for Plaintiff to perform (R. 169-70). She stated that there is not a specific listing or reference in the Appendix covering Plaintiff's condition because the listings address functional capabilities and not musculo-skeletal abnormalities (R. 172-73). Plaintiff's condition affects daily living, but it does not specifically limit fine motor skills (R. 173). She acknowledged Dr. Jondy's 10 pound weight limit (R. 172).

Vocational Expert ("VE") Pauline McEachin classified Plaintiff's fish store work as unskilled and heavy exertionally (R. 175-76). ALJ Sobrino asked VE McEachin to consider a

6

hypothetical individual who was limited to work that involved: no lifting, carrying, pushing, or pulling more than two to five pounds; no climbing ladders, ropes, or scaffolds; only rare stooping and crouching; no overhead reaching; no exposure to hazards; and no twisting movements of the torso (R. 176). The VE testified that an individual of Plaintiff's age, education, and work history with those limitations could not perform Plaintiff's prior work, but could perform jobs such as visual inspector (2,200 light jobs and 2,100 sedentary jobs), information clerk (1,700 light jobs and 1,200 sedentary jobs), video surveillance monitor (2,000 sedentary jobs), and order/checker (5,000 sedentary jobs) (R. 176-77). The VE stated that the numbers she identified were based on the regional economy, and that his testimony was consistent with information contained in the Dictionary of Occupational Titles (R. 177-78).

**4.**     **ALJ Sobrino's Decision**

In an opinion dated May 19, 2006, ALJ Sobrino concluded that Plaintiff meets Title II disability insured status requirements of the Social Security Act through March 2006, and that Plaintiff had not engaged in substantial gainful activity since July 13, 2003, the alleged onset date of disability (R. 20). ALJ Sobrino also found that Plaintiff had severe impairments as that term is defined in the regulations, but did not meet an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1 of the regulations. ALJ Sobrino noted that medical evidence documents impairments that can reasonably be expected to produce pain, but allegations of disabling symptoms are not fully consistent with the objective medical and other evidence of record.

ALJ Sobrino found that Plaintiff was unable to perform his past relevant work. While he cannot perform a full range of light work there are a significant number of jobs in the regional

and national economy that Plaintiff can perform including order clerk (5,000), visual inspector (4,300), information clerk (2,900), and video surveillance monitor (2,000) (R. 21). The ALJ concluded that Plaintiff is not under a disability, as that term is defined in the Regulations 20 C.F.R. 404.1520(g) and 416.920(g).

## II. ANALYSIS

### A. Standards of Review

In adopting federal court review of Social Security administrative decisions, Congress limited the scope of review to a determination of whether the Commissioner's decision is supported by substantial evidence. See 42 U.S.C. § 405(g); *Sherrill v. Sec'y of Health and Human Servs.,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence has been defined as "[m]ore than a mere scintilla;" it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984).

If the Commissioner seeks to rely on vocational expert testimony to carry her burden of proving the existence of a substantial number of jobs that Plaintiff can perform, other than her past work, the testimony must be given in response to a hypothetical question that accurately describes Plaintiff in all significant, relevant respects.[6] A response to a flawed hypothetical

---

[6] *See, e.g.*, *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (hypothetical question must accurately portray claimant's physical and mental impairments); *Cole v. Sec'y of Health and Human Servs.*, 820 F.2d 768, 775-76 (6th Cir. 1987) (Milburn, J., dissenting) ("A vocational expert's responses to hypothetical questions may constitute

8

question is not substantial evidence and cannot support a finding that work exists which the Plaintiff can perform.

**B.     Factual Analysis**

Plaintiff, in his motion for summary judgment asserts that the Commissioner erred as a matter of law in assessing his credibility, as well, as the medical opinion of Dr. Jondy thus forming an inaccurate hypothetical that did not accurately portray his impairments (Dkt. 8, p. 6).

**1.     *Proper Use of Treating Physicians' Opinions***

It is well established that the findings and opinions of treating physicians are entitled to substantial weight. The case law in this circuit has stated that if adequately supported by objective findings, and if uncontradicted by other substantial medical evidence of record, a treating physician's opinion of disability is binding on the Social Security Administration as a matter of law.[7] The administrative decision could reject a properly supported treating physician's opinion of disability if the record contains "substantial evidence to the contrary." *Hardaway v. Sec'y of HHS*, 823 F.2d 922, 927 (6th Cir. 1987).

In the present case, the ALJ was required to treat with special significance Dr. Jondy's diagnosis of recurrent incisional hernias, problems with the anterior abdominal wall and the

---

substantial evidence only if the questions posed accurately portray the claimant's impairments."); *Bradshaw v. Heckler*, 810 F.2d 786, 790 (8th Cir. 1987) ("The question must state with precision the physical and mental impairments of the claimant."); *Myers v. Weinburger*, 514 F.2d 293, 294 (6th Cir. 1975); *Noe v. Weinberger*, 512 F.2d 588, 596 (6th Cir. 1975).

[7]*See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference"); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984) (same); *Lashley v. Secretary of HHS*, 708 F.2d 1048, 1054 (6th Cir. 1983) (same); *Bowie v. Harris*, 679 F.2d 654, 656 (6th Cir. 1982); *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980).

subsequent post-operative analysis (R. 18). Indeed, ALJ Sobrino adopted these impairments in making her determination (R. 20-21). Plaintiff argues that the ALJ was also required to give deferential weight to Dr. Jondy's observation that Plaintiff was unable to "do lifting or strenuous work" without hernia surgery (R. 138, 20).[8]

ALJ Sobrino considered Dr. Jondy's diagnosis noting that "objective medical evidence demonstrates that the residuals of a gunshot wound to the abdomen and hernias imposed significant limitations upon Plaintiff's ability to work and are severe impairments" (R. 20). Yet, this same report noted lifting of less than ten pounds. Medical Expert Voelpel testified that the limit would be 2-5 pounds. The ALJ limited Plaintiff's lifting to 2 to 5 pounds (R. 20, 173). Nothing in Dr. Jondy's report specifically rejects a 2-5 pound lifting capacity. The ALJ can interpret the ambiguities in this form checklist given to Dr. Jondy. The ALJ in evaluating the severity of Plaintiff's limitations can consider Plaintiff's failure in April 2004 to attend his follow-up examination. He can also consider the fact that Plaintiff did not pursue the surgery recommended by Dr. Jondy in January 2006. Plaintiff testified that he did not undergo this process because he did not want to be hospitalized and likely apart from his sons for several months. A reasonable fact finder could consider that a person who could have a significant improvement at so minimal a cost must not be physically limited as he claims. ALJ Sobrino

---

[8]Determination that an individual is disabled is for the discretion of the Commissioner. 20 C.F.R.§ 404.1527(e)(1); *Workman v. Comm'r of Soc. Sec.*, 105 Fed. Appx. 794, 800 (6th Cir., 2004)(A treating physician's conclusory statement that a claimant is disabled is not controlling because the ultimate determination of whether a claimant is disabled rests with the Commissioner.); *Wallace,* 367 F. Supp.2d at 1133. *See* 20 C.F.R. § 416.927(d) (providing that poorly supported opinions are entitled to little weight); *Bogle, v. Sullivan*, 998 F.2d 342, 347 (6th Circ. 1993) ("[T]reating physician's opinions ... receive great weight only if they are supported by sufficient clinical findings and are consistent with the evidence.").

took Plaintiff's present hernias into account when determining that there exists a subset of light work which Plaintiff could perform (R. 21). Accordingly, there is substantial evidence to uphold ALJ Sobrino's determination that Plaintiff can lift 2-5 pounds and perform a limited range of light work. These jobs involving only 2-5 pounds are apparently classified as light because certain walking which Dr. Jondy indicated Plaintiff could do 6 of 8 hours. The VE also identified a substantial number of jobs Plaintiff could perform (R. 176-77).

2. *Plaintiff's Credibility:*

Plaintiff next argues that the ALJ's credibility finding is not supported by the record. Subjective evidence is only considered to "the extent…[it] can reasonably be accepted as consistent with the objective medical evidence and other evidence" (20 C.F.R. 404.1529(a)). The ALJ is not required to accept a claimant's own testimony regarding allegations of disabling pain when such testimony is not supported by the record. *See Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). The issue of a claimant's credibility regarding subjective complaints is within the scope of the ALJ's fact finding discretion. *Kirk v. Secretary of health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981); *Jones v. Commissioner of Social Sec.*, 336 F.3d 469, 476 (6th Cir. 2003).

In order for an ALJ to properly discredit a claimant's subjective testimony, the credibility determination must be accompanied by a detailed statement explaining the ALJ's reasons. S.S.R. 96-7p directs that findings on credibility cannot be general and conclusory findings, but rather they must be specific. The ALJ must say more than the testimony is not credible. *Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994), made it clear that the ALJ cannot merely recount the medical evidence and claimant's daily activities and then without analysis summarily

conclude that the overall evidence does not contain the requisite clinical, diagnostic or laboratory findings to substantiate the claimant's testimony regarding pain. *Id*. at 1039.

ALJ Sobrino found Plaintiff could perform light work with certain exertional limitations. The ALJ was required to make his own credibility assessment, and properly did so, evaluating Plaintiff's allegations of symptoms and limitations in light of the record as a whole (R. 17-21). 20 C.F.R. §§ 404.1529(c), 416.929(c). This included reviewing Plaintiff's detailed hearing testimony in light of a larger record than that reviewed by ME Voelpel or Dr. Jondy.

ALJ Sobrino had substantial evidence to discredit Plaintiff's subjective testimony. While Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, ALJ Sobrino found that Plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely credible. As the ALJ noted, Plaintiff had gone nearly two years without seeking follow-up care from Dr. Jondy (R. 18). Plaintiff also turned down another surgery on his hernia, and was according to Dr. Jondy "looking for disability and not interested in repairing hernias at this stage." Plaintiff cooks, cleans and helps with some yard work (R. 19). These activities suggest that Plaintiff's restrictions in activities of daily living are not as severe as he claims. Further, the ALJ found that the medical record did not support Plaintiff's assertion that his medication causes side effects including drowsiness.

### 3. *Inaccurate Hypothetical:*

Plaintiff claims that the ALJ asked the VE an incomplete hypothetical question because he never included all of Plaintiff's impairments and limitations. The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that

the claimant can perform." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999). To meet the burden of showing that Plaintiff could perform work that is available in the national economy, the Commissioner must make a finding "supported by substantial evidence that [he] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This kind of "[s]ubstantial evidence may be produced through reliance on the testimony of a vocational expert (VE) in response to a 'hypothetical' question, but only 'if the question accurately portrays [his] individual physical and mental impairments.'" *Id.* (citations omitted).

ALJ Sobrino in his questions to VE McEachin accurately described Plaintiff's physical condition. The ALJ proffered a hypothetical individual who was limited to work that involved: no lifting, carrying, pushing, or pulling more than two to five pounds; no climbing ladders, ropes, or scaffolds; only rare stooping and crouching; no overhead reaching; no exposure to hazards; and no twisting movements of the torso (R. 176). VE McEachin testified that an individual of Plaintiff's age, education, and work history with those limitations could perform jobs such as visual inspector (2,200 light jobs and 2,100 sedentary jobs), information clerk (1,700 light jobs and 1,200 sedentary jobs), video surveillance monitor (2,000 sedentary jobs), and order/checker (5,000 sedentary jobs) (R. 176-77).

Based on the testimony of VE McEachin, a reasonable ALJ could conclude that there existed sufficient jobs, which Plaintiff could perform even though he could not engage in any of his past relevant work.

**III.    RECOMMENDATION**

For the reasons stated above, it is recommended that Defendant's Motion for Summary Judgment be **GRANTED** and Plaintiff's motion be **DENIED**. Either party to this action may object to and seek review of this Report and Recommendation, but must act within ten days of service of a copy hereof as provided for in 28 U.S.C. section 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981), *Thomas v. Arn*, 474 U.S. 140 (1985), *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987), *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objection must be served upon this Magistrate Judge.

Note: any objections must be labeled as "Objection #1," "Objection #2," etc.; any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than ten days after service an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

DATED: December 26, 2007          s/ Steven D. Pepe
                                  STEVEN D. PEPE
                                  United States Magistrate Judge

CERTIFICATE OF SERVICE

I hereby certify that on,  I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification to the following: Mikel Lupisella, James A. Brunson and Commissioner of Social Security and I hereby certify that I have mailed by U.S. mail the paper to the following non-ECF participants: n/a

                                         s/Alissa L. Greer
                                         Case Manager to Magistrate Judge Steven D. Pepe
                                         (734) 741-2298